**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

LOIS WILLIAMS-RAYNOR                                                                                          PLAINTIFF

v.                                          No. 4:16CV00761 JLH

ARKANSAS DEPARTMENT OF HEALTH;
ABBY HOLT, Section Chief/Health Statistics Division,
in her individual and official capacities;
LYNDA LEHING, Branch Chief/Health Statistics Division,
in her individual and official capacities; and
SUSAN WILEY, Associate Director for Management
and Operations, in her individual and official capacities                                         DEFENDANTS

**OPINION AND ORDER**

Lois Williams-Raynor commenced this action against the Arkansas Department of Health and Abby Holt, Lynda Lehing, and Susan Wiley, in their individual and official capacities, alleging employment discrimination and retaliation. She seeks relief under Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment. Williams-Raynor alleges that she was discriminated against because of her race[1] and that she was discharged for complaining of disparate treatment. She seeks injunctive relief, in addition to money damages. The defendants have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). For the following reasons, the motion to dismiss is granted in part and denied in part.

**I.**

The following facts are taken from the amended complaint. Document #12. Williams-Raynor worked at the University of Arkansas for Medical Sciences from 1988 through 2016, starting as a records clerk and after various promotions, finishing as the Cancer Registry Supervisor/Director. She began working for the Health Department in the Health Statistics Division

---

[1] Williams-Raynor has abandoned her claim for sex discrimination. Document #18 at 15.

on January 31, 2016. Her amended complaint does not identify her position at the Health Department, but the EEOC charge, which is attached to the amended complaint, says that she was "a Health Program Specialist III/Cancer Registry Supervisor." Document #12 at 16. Sometime in April of that year, Branch Chief Lynda Lehing asked Williams-Raynor to evaluate an employee under William-Raynor's direct supervision who had been placed on probation due to a poor performance review. This employee was black. Lehing explained that the employee was a problem and needed to go.

Williams-Raynor evaluated the employee's progress pursuant to a Performance Improvement Plan and found that the employee had improved. But when she told Lehing and Abby Holt[2]—Section Chief-Director—the results of the evaluation, they were dissatisfied. They sought a second opinion from Quality Assurance Specialist John Guire. He conducted another review of the employee on May 13 and found that she had made no improvement. Lehing and Holt did not meet with Williams-Raynor and Guire to discuss the opposing evaluations. The employee was ultimately discharged on June 24. In the meantime, Williams-Raynor met with Lehing and Holt. She voiced certain concerns: (1) Guire was supervising a white employee[3] who was supposed to be under Williams-Raynor's supervision; (2) The white employee was treated differently from the black

---

[2] Holt began working for the Health Department on April 11, 2016.

[3] Her name is Christy Lynn Bell and at the time the events took place, she was on probation. Lehing, Holt, and Guire personally dealt with Bell's conduct, even though Williams-Raynor was her direct supervisor. When Bell was sick, she contacted Guire to let him know she would be absent from work. Williams-Raynor complained to Holt that Bell was supposed to contact her direct supervisor, rather than Guire. Susan Wiley—Associate Director for Management and Operations—was responsible for approving leave without pay.

employees who remained under Williams-Raynor's supervision; and (3) Guire should not have been directed to re-evaluate the black employee's performance.

Soon after the meeting, Susan Wiley—Associate Director of Management and Operation—stated to Williams-Raynor: "I am making this short and sweet, you are not working out and you are still on probation, therefore, we are terminating your employment." Document #12 at 10, ¶ 25. The defendants did not provide reasons for the termination and failed to follow the Health Department's policy, which requires the provision of a counseling statement to the employee prior to termination. Williams-Raynor did not find out until after her termination that three counseling statements had been placed in her employee file.

## II.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal based upon a lack of subject matter jurisdiction. To prevail on a motion to dismiss for lack of subject matter jurisdiction, the challenging party must successfully attack the complaint, either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). "In a facial challenge to jurisdiction, all of the factual allegations, as contained in the non-moving party's pleadings, which concern the jurisdictional issue, are presumed to be true and, therefore, the non-moving party receives the same protections that it would receive if it were defending against a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure." *Hoeffner v. Univ. of Minnesota,* 948 F. Supp. 1380, 1384 (D. Minn. 1996). If a plaintiff fails to allege an element necessary for a finding of subject matter jurisdiction, the complaint should be dismissed. *Titus*, 4 F.3d at 593.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  The Court accepts as true all of the factual allegations contained in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014).  The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

In *Swierkiewicz v. Sorema N.A.*, the Supreme Court held that, in the employment discrimination context, a plaintiff's complaint does not need to allege specific facts establishing a prima facie case of discrimination under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) because a prima facie case under that framework is an evidentiary standard.  534 U.S. 506, 508, 122 S. Ct. 992, 995, 152 L. Ed. 2d 1 (2002).  Instead, the Court recited Rule 8(a), which provides that a complaint must contain only a short and plain statement showing that the pleader is entitled to relief. *Id*. (citing Fed. R. Civ. P. 8(a)(2)).  When *Swierkiewicz* was decided, the *Conley v. Gibson* interpretation of

Rule 8(a), establishing a notice-pleading[4] standard was good law. *Id.* at 512, 122 S. Ct. at 998. The Court explained that "this simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.*

Since *Twombly* and *Iqbal* refined[5] the Supreme Court's interpretation of Rule 8(a) and held that plausibility is the pleading standard, whether *Swierkiewicz* is still good law has been a matter of debate. *See* Charles A. Sullivan, *Plausibly Pleading Emp't. Discrimination*, 52 Wm. & Mary L. Rev. 1613, 1619-21 (2011). *See also McCleary-Evans v. Maryland Dept. of Transp.*, 780 F.3d 582, 587 (4th Cir. 2015) ("*Swierkiewicz* in any event applied a more lenient pleading standard than the plausible-claim standard now required by *Twombly* and *Iqbal*."); *Littlejohn v. City of New York*, 795 F.3d 297, 309 (2nd Cir. 2015) (contemplating whether the *Iqbal* requirements apply to Title VII complaints); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (holding that plaintiff's complaint included enough facts in support of a claim of employment discrimination, stating that a plaintiff "need only aver that the employer instituted a (specified) adverse employment action

---

[4] Notice-pleading did not require the plaintiff to allege in detail the facts upon which his claims were based. He only had to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), *abrogated by Twombly*, 550 U.S. at 563, 127 S. Ct. 1955.

[5] The Supreme Court explained in *Twombly* that the lower courts had taken a phrase from *Conley* out of context and declared it a pleading standard: "[A] good many judges and commentators have balked at taking the literal terms of the *Conley* passage as a pleading standard . . . *Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough . . . The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." 50 U.S. at 562-63, 127 S. Ct. at 1969.

against the plaintiff on the basis of her sex[, race, etc.].").  Neither in *Twombly* nor *Iqbal* did the Supreme Court expressly overrule *Swierkiewicz.*

The Eighth Circuit has relied on *Swierkiewicz* insofar as it held that a plaintiff does not have to plead specific facts establishing a prima facie case of discrimination under the *McDonnel Douglas* burden-shifting framework.  *See Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (applying the plausibility standard but acknowledging that in *Swierkiewicz* "the Supreme Court negated any need to plead a prima facie case in the discrimination context.").  A recent Eighth Circuit opinion suggests that a more lenient pleading standard applies in the employment discrimination context. *See LaKeysia Wilson v. Ark. Dept. of Human Servs.* 2017 WL 780869 at *3, __ F.3d __ (8th Cir. March 1, 2017).  The court explained that "[u]nder the 'simplified notice pleading standard' that governs *McDonnell Douglas* retaliation claims, summary judgment motions—not motions to dismiss—should dispose of most unmeritorious claims."  *Id*.  The Eighth Circuit quoted *Johnson v. City of Shelby*, a case in which the Supreme Court cited *Swierkiewicz* approvingly, in support of this proposition: "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."  135 S. Ct. 346, 347, 190 L. Ed. 2d 309 (2014) (per curiam).

The defendants argue:  (1) the Court does not have jurisdiction over the section 1981 and 1983 official capacity claims because they are barred by sovereign immunity; (2) Williams-Raynor failed to file a charge of discrimination alleging retaliation with the Equal Employment Opportunity Commission; and (3) the complaint fails to allege a claim upon which relief may be granted for race discrimination or retaliation.

6

## III.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. It has been interpreted to bar suits brought against a State in federal courts by her own citizens, as well as those of another State. *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974). The Eleventh Amendment generally bars any suit brought in federal court against a state, state agency, or state officials acting in their official capacities. *See Seminole Tribe v. Florida*, 517 U.S. 44, 74, 116 S. Ct. 1114, 1132, 134 L. Ed. 2d 252 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984); *Edleman*, 415 U.S. at 663, 94 S. Ct. at 1355. Suits against a state, state agency, or state officials may be allowed under three circumstances: (1) Congress may abrogate the States' immunity; (2) a state may waive its immunity; or (3) under the *Ex parte Young* doctrine, a plaintiff may file suit against state officials acting in their official capacities seeking prospective injunctive relief for ongoing violations of federal law. *Seminole Tribe*, 517 U.S. at 74, 116 S. Ct. at 1132.

Williams-Raynor does not contend that the State has consented to suit in federal court or waived its immunity; rather, she contends that the *Ex parte Young* exception applies. Document #18 at 14. She is partially correct.

The Health Department is immune from suit based on Williams-Raynor's §§ 1981 and 1983 claims, whether for damages or injunctive relief. *See Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("While under the doctrine set forth in [*Ex parte Young*], state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh

amendment, the same doctrine does not extend to states or state agencies."); *Singletary v. Mo. Dept. of Corrs.*, 423 F.3d 886, 890 (8th Cir. 2005) (holding that the Missouri Department of Corrections was immunized from any claim brought under § 1981).

State officials in their official capacities are likewise immune from suit for damages. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989) (stating that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" when the suit is for damages). *See also Bakhitiari v. Lutz*, 507 F.3d 1132, 1138 (8th Cir. 2007) (holding plaintiff's claims for relief under §§ 1981 and 1983 against the defendants in their official capacities were barred under the Eleventh Amendment). But the Eleventh Amendment does not protect state officials sued in their official capacities from claims for prospective injunctive relief alleging ongoing violations of federal law. *See Green v. Mansour*, 474 U.S. 64, 69, 106 S. Ct. 423, 426, 88 L. Ed. 2d 371 (1985). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002) (internal quotation omitted).

Williams-Raynor alleges an ongoing violation of federal law—discriminatory discharge. *See Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997). And to the extent she seeks reinstatement, Williams-Raynor seeks injunctive relief properly characterized as prospective. *Id. See also Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985) ("Reinstatement is purely prospective injunctive relief that orders the state official to return the former employee to the state's payroll . . ."). Furthermore, if Williams-Raynor succeeds and the Court orders reinstatement, then an award

of backpay may be permissible under *Ex parte Young* if limited to the time the Court orders reinstatement until Williams-Raynor is in fact reinstated. *See Barnes v. Bosley*, 828 F.2d 1253, 1257-58 (8th Cir. 1989). Otherwise, this Court's "remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman*, 415 U.S. at 677, 944 S. Ct. at 1362. Williams-Raynor's §§ 1981 and 1983 claims against the state officials in their official capacities for prospective injunctive relief are not barred by sovereign immunity.

## IV.

Under Title VII, before filing a lawsuit in federal court, aggrieved individuals must "(1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (citation omitted). A claim for employment discrimination is barred if the plaintiff fails to file such a charge. *See Kline v. City of Kansas City, Fire Dept.*, 175 F.3d 660, 664 (8th Cir. 1999). Thus, to assert a claim for Title VII retaliation, a plaintiff must first exhaust her administrative remedies. *Williams*, 21 F.3d at 222. "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Id*. To exhaust her administrative remedies on a retaliation claim, a plaintiff must give notice of all claims of discrimination in the initial EEOC charge. *See Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630-31 (8th Cir. 2000). Claims outside the scope of the initial EEOC charge circumvent the EEOC's investigative and conciliatory process, and fail to provide the charged party with notice. *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020,

1025 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). It follows that "[t]he breadth of the civil suit is . . . as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Stuart*, 217 F.3d at 631. Even if a claim is not listed in the EEOC charge, a plaintiff is deemed to have exhausted her administrative remedies and may seek relief in some situations if the "discrimination . . . is like or reasonably related to the substance of the allegations in the administrative charge." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) (internal quotation omitted).

Williams-Raynor argues that although she did not check the box for retaliation, the substance of the charge put the defendants on notice of the retaliation claim. *See* Document #9 at 21. "[T]he question is whether the entire text of the charge, and not simply the boxes checked or the claims alleged therein, provides 'sufficient notice of [a] retaliation claim.'" *Henke v. Allina Health Sys.*, 698 F. Supp. 2d 1115, 1124 (D. Minn. 2010); *See also Graham v. Bryce Corp.*, 348 F. Supp. 2d 1038, 1042 (E.D. Ark. 2004) ("Nothing in the charge put the EEOC or [the defendant] on notice that she would later bring a claim for retaliation on any set of facts."). In *Duncan v. Delta Consol. Indus., Inc.*, the plaintiff did the inverse of what Williams-Raynor did here. She filed a charge with the EEOC alleging retaliation for having complained about sexual harassment but did not check the box for sex discrimination. *Duncan*, 371 F.3d at 1023-24. In her judicial complaint, however, Duncan alleged claims for both retaliation and sex discrimination. *Id*. The district court held that her sex discrimination claim was barred. *Id*. The Eighth Circuit confirmed, stating,

> The particulars of her EEOC complaint [made it] clear that she was alleging retaliation for having complained about sexual harassment . . . . She did not provide any details concerning any ongoing harassment, and the reference to past harassment is simply insufficient to put the EEOC or [the defendant] on notice of the charge.

*Duncan*, 371 F.3d at 1026.

The EEOC form instructed Williams-Raynor to check the appropriate box or boxes for the basis of the discrimination alleged. Document #17 at 20. She checked the boxes for "race" and "sex," but, as noted, did not check the box for "retaliation." *Id*. In the space provided for her to describe the "particulars," Williams-Raynor stated:

> I was hired on or about 01/31/16, as a Health Program Specialist III/Cancer Registry Supervisor. On 04/26/16, the Director told me she felt there was division between the two of us. On 05/17/16, I requested to meet with the Director, who invited the presence of the Branch Chief, to discuss several issues regarding disparities of professional management in relation to QA Specialist [(Guire)], staff members, and myself. On 05/19/16, I was discharged. I later requested a copy of my personnel file and found 3 counseling statements that were never presented to me.
>
> I was told I was discharged because it was not working out. I was not given a reason for the 3 counseling statements found in my file.
>
> I believe I was disciplined and discharged because of my race, black, and sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id*. Williams-Raynor explicitly provides that she was disciplined and discharged because of her race. She references her complaints to management regarding disparate treatment and alleges she was fired two days after she made those complaints. She does not say anything to draw a causal connection between those events by asserting a claim for retaliation, but such a causal connection can be inferred. In her judicial complaint she alleges that her termination was in retaliation for "confronting Defendants regarding what she believed to be different treatment of her compared to her white fellow employee, as related to her supervisory duties . . ." Document #12 at 12, ¶29.

The charge must be construed with liberality in light of Title VII's remedial purpose. *Nichols v. Am. Nat. Ins. Co.*, 154 F.3d 875, 876-77 (8th Cir. 1998). Williams-Raynor was not required to state explicitly that her complaints to management were the but for cause of her

termination. "[W]hen the EEOC charge alleges facts from which a reader can infer a link between protected activity—for example, a complaint about perceived discriminatory treatment—and a subsequent adverse employment action, a retaliation claim asserted in a subsequent lawsuit will be 'reasonably related' to the EEOC charge." *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 438 (E.D.N.Y. 2010) (collecting cases).  Unlike in *Duncan*, the charge in this case provided the EEOC and the defendants with sufficient notice of a retaliation claim.  The charge alludes to the prima facie elements of a claim for Title VII retaliation–(1) engaging in protected activity by complaining about discriminatory treatment and (2) suffering an adverse employment action as a result.  Therefore, though she did not use the term "retaliation" or check the box, Williams-Raynor has exhausted her claim and is not barred from asserting it in her amended complaint.

## V.

**A.    Race Discrimination**

Under Title VII, an employer may not discriminate against an employee with respect to her compensation, or the terms, conditions, or privileges of her employment because of the employee's race.  42 U.S.C. § 2000e-2(a)(1).  The elements of a claim of racial discrimination are: (1) the plaintiff was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful discrimination.  *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 700 (8th Cir. 2006); *Tymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006).  It is undisputed that Williams-Raynor was a member of a protected class and that she suffered an adverse employment action—she was fired.  Her complaint can be construed to allege that she was meeting the employer's legitimate job expectations.  She also alleges facts that give rise to an inference of

unlawful discrimination, specifically that she was fired during a time in which the supervisors in her division at the Health Department were treating black employees differently from white employees. Therefore, the amended complaint sufficiently alleges all of the elements of a claim of racial discrimination.

**B.     Retaliation**

The amended complaint also states a claim for retaliation. To establish a prima facie case of retaliation, Williams-Raynor must show that she engaged in statutorily protected conduct, she suffered an adverse employment action, and a causal connection exists between the two. *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 702 (8th Cir. 2006). Williams-Raynor has sufficiently plead all three elements of the prima facie case.

First, she alleges that she arranged a meeting to complain to her superiors about disparate treatment—"that she was Ms. Bell, a white employee's supervisor, but was not supervising her; and that Mr. Guire, a white male employee was being allowed to supervise Ms. Bell . . . Raynor voiced other concerns regarding the difference of treatment (more favorable) of this employee, compared to other employees (black) under her[] supervision." Document #12 at 8-9, ¶20. Complaining explicitly about discriminatory treatment is a statutorily protected activity. *See Helton v. Southland Racing Corp.*, 600 F.3d 954, 960-61 (8th Cir. 2010) (finding that because employee did not mention race during phone call in which she complained about a fellow employee, the call was not a statutorily protected activity); *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 914-15 (8th Cir. 2006) (actively complaining about racially hostile comments is protected activity); *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005) (casually observing that there were no black employees in management was not a protected activity).

Second, Williams-Raynor alleges that she was fired for her complaints. Discharging an employee is an adverse employment action. *See Wilson*, 2017 WL 780869 at *3. Third, the amended complaint contains sufficient factual allegations from which the Court can infer causation. Document #12 at 8, ¶¶19-20. In *Wilson*, the Eighth Circuit held that an employee has sufficiently alleged causation:

> Wilson emphasizes the six-week span between her EEOC charge and termination. Even at summary judgment, "[a] plaintiff can establish a causal connection between his complaints and an adverse action through circumstantial evidence, such as the timing of the two events." *Turner v. Gonzales*, 421 F.3d 688, 696-97 (8th Cir. 2005). [ ] On the allegations here, the six-week period between the EEOC charge and the termination plausibly alleges a but-for causal connection.

2017 WL 780869 at *3. Williams-Raynor met with Lehing and Holt to air her complaints on May 17 and she was fired just two days later. Document #12 at 8, ¶¶19-20.

## VI.

Turning now to the claims against Holt, Lehing, and Wiley in their individual capacities, Williams-Raynor alleges that they engaged in intentional discrimination in violation of Title VII and § 1981, and that such intentional discrimination violated the Equal Protection Clause of the Fourteenth Amendment.

The state officials argue that they are entitled to qualified immunity. Document #14 at 18. A state official sued in her individual capacity may invoke qualified immunity. *Sisney v. Reisch*, 674 F.3d 839, 844 (8th Cir. 2012)**.** A two-step inquiry determines whether a government official is entitled to qualified immunity: "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right[] and (2) [whether] the right was clearly established at the time of the deprivation." *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (quoting *Parish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). "The defendants are

14

entitled to qualified immunity unless the answer to both of these questions is yes." *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012) (quoting *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012)). Courts may address either step first. *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818.

A clearly established right is a right sufficiently clear "that every reasonable official would [understand] that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (internal quotations marks omitted). The right allegedly violated must be defined in a particularized manner, as opposed to a broad generalization, so that a reasonable official understands the right's contours. *Id.* at 2094. At the same time, however, the right is not defined in such a particularized manner that it is clearly established only if the same action has previously been held unlawful. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). The salient question "is whether the state of the law at the time gave the officials 'fair warning' their conduct was unlawful." *Sisney*, 674 F.3d at 845.

Supervisors may not be held individually liable under Title VII, so the defendants are entitled to dismissal of Williams-Raynor's Title VII claims against them in their individual capacities. *Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999).

The elements of a Title VII employment discrimination claim and a § 1981 claim are identical. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056, 1060 (8th Cir.1997). Because Williams-Raynor has stated a claim under Title VII for race discrimination and retaliation, she has stated a claim under § 1981. *See Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013). "Courts have long recognized as 'clearly established' an employee's right to be free from an adverse action 'based on racial discrimination or in retaliation for exercising his rights.'" *Ellis v. Houston*, 742 F.3d 307, 325 (8th Cir. 2014) (quoting *Turner v. Ark. Ins. Dep't*, 297 F.3d 751, 753

(8th Cir. 2014)). Therefore, the defendants are not entitled to qualified immunity on the individual capacity § 1981 race discrimination and retaliation claims.

Employment rights created by Title VII cannot be enforced through § 1983, absent a separate constitutional violation. *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012). The Equal Protection Clause of the Fourteenth Amendment confers on an individual a right to be free of racial discrimination in public employment. *Id*. Such a claim may be asserted under 42 U.S.C. § 1983. *Id*. at 642-43. Regarding Williams-Raynor's claim for retaliation in violation of the Equal Protection Clause, the Eighth Circuit directly addressed the issue in *Burton v. Ark. Secretary of State*: "'The right to be free from retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation.'" *Id*. (quoting *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340 (11th Cir. 1995)). "We have only recognized that § 1983 provides a vehicle for redressing claims of retaliation on the basis of the First Amendment." *Id*. (quoting *Tyler*, 628 F.3d at 986). The Eighth Circuit held that no established right exists under the equal protection clause to be free from retaliation. *Id*. Because the facts do not demonstrate the deprivation of a separate constitutional right, the defendants are entitled to qualified immunity on Williams-Raynor's individual capacity § 1983 claims for retaliation. They are not, however, entitled to qualified immunity on her claims for racial discrimination under § 1983.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Document #13. The claims of Lois Williams-Raynor against the Arkansas Department of Health under 42 U.S.C. § 1981 and § 1983 are dismissed with prejudice. Her claims

against Abby Holt, Lynda Lehing, and Susan Wiley in their official capacities for money damages are dismissed with prejudice. Her claims against those individuals under Title VII are dismissed with prejudice. The motion to dismiss is denied as to Williams-Raynor's claims for race discrimination and retaliation against the Arkansas Department of Health under Title VII and against Abby Holt, Lynda Lehing, and Susan Wiley in their official capacities for prospective relief and in their individual capacities for money damages under 42 U.S.C. § 1981, and as to William-Raynor's claims for race discrimination against Holt, Lehing, and Wiley in their official capacities for prospective relief and in their individual capacities for money damages under § 1983.

    IT IS SO ORDERED this 15th day of March, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE